1

2

3

4

5

6

7                    UNITED STATES DISTRICT COURT

8                          DISTRICT OF OREGON

9                          PORTLAND DIVISION

10

11
LIBERTY NATURAL PRODUCTS, INC.,              No. 3:11-cv-00264-HU
12
                   Plaintiff,                        OPINION AND
13                                                        ORDER
          v.
14
VALERIE HAWK HOFFMAN, SUNRISE
15 HERBAL REMEDIES, INC., Dissolved,
   and SAGE ADVICE OF PALM BEACH,
16 INC., Dissolved,

17                 Defendants.
   _____
18
   Philip F. Schuster, II
19 Email: schuster@pcez.com
   DIERKING & SCHUSTER
20 3565 NE Broadway Street
   Portland, OR 97232
21 Telephone: (503) 335-7765
   Facsimile: (503) 281-1983
22
          Attorney for Plaintiff
23
   William D. Brandt
24 Email: bill@brandtlawoffices.com
   WILLIAM D. BRANDT PC
25 880 Liberty Street NE
   Salem, OR 97301
26 Telephone: (503) 485-4168
   Facsimile: (503) 364-6735
27
          Attorney for Defendants
28

Page 1 - OPINION AND ORDER

HUBEL, Magistrate Judge:

Proving once again that "irony is no stranger to the law," *United States v. McIntosh*, 380 F.3d 548, 556 n.3 (1st Cir. 2004), there are eight motions before the Court in this wrongful use of civil proceedings case: (1) Plaintiff Liberty Natural Products, Inc.'s ("Plaintiff") motion for leave to file a third amended complaint; (2) Plaintiff's motion to remand to Clackamas County Circuit Court; (3) third-party attorney Kevin Brague's ("Brague") motion to quash a subpoena duces tecum; (4) Plaintiff's motion to compel answers to interrogatories; (5) Plaintiff's motion to compel answers to requests for admission; (6) Plaintiff's motion to compel production of documents; (7) Defendants Valerie Hawk Hoffman ("Hoffman"), Sunrise Herbal Remedies, Inc. ("Sunrise"), and Sage Advice of Palm Beach Inc.'s ("Sage Advice") (collectively, "Defendants") motion for leave to file a supplemental response, nunc pro tunc; and (8) Plaintiff's motion for imposition of sanctions pursuant to Federal Rule of Civil Procedure ("Rule") 11(c).

The parties have given full consent to adjudication of the case by a magistrate judge pursuant to 28 U.S.C. § 636(c). Having reviewed the papers and pleadings submitted by the parties and having heard oral argument on the pending motions, the Court hereby ORDERS as follows: (1) Plaintiff's motion (ECF No. 104) to file a third amended complaint is DENIED; (2) Plaintiff's motion (ECF No. 108) to remand to Clackamas County Circuit Court has been withdrawn; (3) Brague's motion (ECF No. 114) to quash a subpoena duces tecum is DENIED; (4) Plaintiff's motion (ECF No. 124) to compel answers to interrogatories is GRANTED in part and DENIED in

Page 2 - OPINION AND ORDER

part; (5) Plaintiff's motion (ECF No. 128) to compel answers to requests for admission is DENIED; (6) Plaintiff's motion (ECF No. 137) to compel production of documents is GRANTED in part and DENIED in part; (7) Defendants' motion (ECF No. 150) for leave to file a supplemental response, nunc pro tunc, has been withdrawn; and (8) Plaintiff's motion (ECF No. 152) for sanctions is DENIED.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

In November 2008, Defendants prosecuted two breach of contract counterclaims against Plaintiff in Clackamas County Circuit Court. Under the first counterclaim, Defendants sought $76,400 for allegedly damaged and expired product, and $300,000 for the alleged resulting loss of business.  The second counterclaim sought $100,000 based on Plaintiff's alleged sale of Defendants' product known as "Chill Out."

In April 2009, Plaintiff obtained a general judgment against Defendants, which stated:

> Following closing argument, the court pronounced its judgment in favor of the Plaintiff against the Defendants Valerie Hawk Hoffman, Sunrise Herbal Remedies, Inc. and Sage Advice, Inc., jointly and severally, on its first claim, in the sum of $67,466.90, with pre-judgment interest thereon as set forth hereafter, together with further judgment in favor of the Plaintiff against the Defendants Valerie Hawk Hoffman, Sunrise Herbal Remedies, Inc. and Sage Advice, Inc., jointly and severally, on its second claim, in the sum $69,198.20[.]

(Schuster Decl. (Docket No. 35) Ex. 3.)

In August 2009, a supplemental judgment was entered in favor of Plaintiff, which stated:

> Plaintiff is entitled to an enhanced prevailing party fee in the sum of $5,500, per ORS 20.190.  The court finds that Defendants against whom judgment was granted herein filed counterclaims and/or defenses that were not objectively reasonable and were filed in an effort to gain leverage in settlement negotiations.

Page 3 - OPINION AND ORDER

1
2
3

      The court finds that the same Defendants, through Valerie Hoffman, repeatedly offered false testimony and exhibits in trial of this matter. The court also finds that the Defendants did not act with diligence in trying to settle Plaintiff's claims.

4
5
6
7
8
9

      The court, in awarding attorney fees to the Plaintiff under ORS 20.105, finds that the Defendant against whom judgment was entered had no objectively reasonable basis to counterclaim against Plaintiff for an alleged overpayment of Plaintiff's account. The Defendants did not raise the alleged overpayment in a series of emails between the parties months before trial when Plaintiff's account was being discussed. . . . Defendant Hoffman at trial fabricated an exhibit to support the claim of overpayment and testified falsely regarding it.

10
11
12
13

(Schuster Decl. (Docket No. 35) Ex. 4.) Based on the state court's findings, judgment was entered against Defendants; however, Plaintiff's request that the judgment be entered against Defendants' trial counsel, Kevin Brague, was denied.

14
15
16
17
18
19
20
21

    On January 20, 2011, Plaintiff filed the present action against Defendants in Clackamas County Circuit Court. Plaintiff set forth a single claim for wrongful use of civil proceedings in violation of ORS 31.230(1) and sought $7,058 in damages. On February 7, 2011, Plaintiff sought leave to amend its complaint.[1] The amended complaint requested consequential damages of $9,367.69 and punitive damages of $200,000 based on the counterclaims that Plaintiff argues were wrongfully prosecuted against it.

22
23
24
25

    Defendants timely filed their notice of removal to this Court on March 2, 2011. Soon thereafter, Plaintiff moved to remand the proceeding to Clackamas County Circuit Court. On September 2, 2011, Plaintiff's motion to remand was denied because the parties

26
27
28

    [1] "[A] claim for damages for wrongful use of a civil proceeding shall be brought in an original action *after* the proceeding which is the subject matter of the claim is concluded." OR. REV. STAT. 31.230(3) (2009) (emphasis added).

Page 4 - OPINION AND ORDER

1 are of diverse citizenship and the amount in controversy exceeds
2 $75,000.

3      On April 11, 2012, Plaintiff's motion for partial summary
4 judgment on its wrongful use of civil proceedings claim was granted
5 in part and denied in part.  In so holding, this Court declined to
6 express an opinion as to whether the doctrine of issue preclusion
7 barred Defendants from asserting they had probable cause to
8 prosecute their counterclaims in the Clackamas County proceeding,
9 because (1) the Oregon appellate courts had not addressed whether
10 findings that arise out of a proceeding under ORS 20.105 should be
11 given preclusive effect; and (2) substantive treatment of the issue
12 would be better served by further developing the record of the
13 Clackamas County proceeding before Judge Maurer.  This Court also
14 rejected Plaintiff's argument that issue preclusion barred
15 Defendants from revisiting the issue of malice or improper purpose.
16 Plaintiff had argued that Judge Maurer already spoke on the issue
17 of malice in awarding attorney fees under ORS 20.105(1), but, as
18 the April 11, 2012 Opinion and Order makes clear, ORS 20.105(1)
19 makes no mention of malice.

20      In the months that followed, the parties filed the host of
21 motions that are now before the Court.

22                        ***II.  DISCUSSION***

23 ***A. Plaintiff's Motion for Leave to File a Third Amended Complaint***

24      Plaintiff moves the Court for an order granting it leave to
25 file a third amended complaint. Plaintiff's proposed third amended
26 complaint seeks to (1) add its president, James Dierking
27 ("Dierking"), as a new party plaintiff; (2) alter the caption of
28 the complaint to reflect the fact that Hoffman has remarried and

1  adopted the name of Valerie *Holland* Hoffman; (3) add a cause of
2  action for intentional infliction of emotional distress ("IIED") on
3  behalf of Dierking; and (4) reduce the request for punitive damages
4  from $200,000 to $100,000.[2]

5      Plaintiff's proposed cause of action for IIED appears to be
6  predicated upon a theory that Hoffman allegedly attempted to extort
7  $91,200 from Plaintiff during the Clackamas County proceeding by
8  threatening to file regulatory complaints against Plaintiff.  Then,
9  in July 2010, after the termination of the Clackamas County
10 proceeding, Hoffman began filing various complaints with state and
11 federal agencies.  Hoffman has continued to file such complaints
12 against Plaintiff during the pendency of this action as well.
13 Plaintiff's proposed third amended complaint also suggests
14 Dierking's claim for IIED would be based on Defendants' filing of
15 the counterclaims that are the subject of its claim for wrongful
16 use of civil proceedings.  Plaintiff "feels that . . . [Hoffman]'s
17 conduct constitutes an extraordinary and outrageous transgression
18 of the bounds of socially tolerable conduct."  (Pl.'s Mem. Supp.
19 (ECF No. 105) at 3.)

20     Defendants oppose Plaintiff's motion for leave because "the
21 parties have proceeded with discovery as well as . . . engaged in
22 motion practice, including motions for summary judgment . . . [and]
23 [n]ow, at the 11th hour, with the discovery deadline fast
24 approaching, [P]laintiff seeks to file a [Third] Amended

25

26     [2] Originally, Plaintiff also sought to add causes of action
   for "outrageous conduct" and violation of the Unlawful Trade
27 Practices Act ("UTPA"), ORS 646.605 to 646.652.  Plaintiff has
   since agreed to drop those claims.  (Pl.'s Reply at 2.)
28

Page 6 - OPINION AND ORDER

1 Complaint[.]" (Defs.' Opp'n (ECF No. 112) at 2.)  In other words,
2 Defendants object to Plaintiff filing its motion for leave on July
3 26, 2012, six days from the close of fact discovery.

4     The Ninth Circuit's general policy is to permit amendment with
5 "extreme liberality." *Simon v. Behavioral Health, Inc.*, 208 F.3d
6 1073, 1084 (9th Cir. 2000).  However, when a district court has
7 already granted a plaintiff leave to amend, as this Court did on
8 June 12, 2012, resulting in the second amended complaint being
9 filed June 14, 2012, its discretion in deciding subsequent motions
10 to amend is "particularly broad." *Griggs v. Pace Am. Group, Inc.*,
11 170 F.3d 877, 879 (9th Cir. 1999).  Several factors are taken into
12 account to assess the propriety of a motion for leave to amend,
13 such as bad faith, undue delay, prejudice to the opposing party,
14 and futility of amendment.  *Johnson v. Buckley*, 356 F.3d 1067,
15 1077-78 (9th Cir. 2004).

16     In this case, the addition of Dierking and the claim for IIED
17 would be based almost exclusively on previously known facts.
18 Defendants' filing of counterclaims and Hoffman's alleged attempt
19 to extort money from Plaintiff allegedly occurred during the course
20 of the Clackamas County proceeding, and Hoffman began filing
21 regulatory complaints in July 2010.  Plaintiff's case has been
22 pending for over twenty-two months in state and federal court.  *Cf.*
23 *Wade v. County of Sacramento*, 447 F. App'x 842, 843 (9th Cir. 2011)
24 ("The district court did not abuse its discretion in denying [the
25 litigant] leave to file a third amended complaint to add
26 claims . . . based on previously known facts where his case had
27 been pending for two years.")

28

Page 7 - OPINION AND ORDER

1   Furthermore, Plaintiff made this request shortly before the
2   close of discovery, even though all of Plaintiff's "new" facts had
3   been available to Plaintiff and formed the basis to a large extent
4   of  the  claim  in  the  complaint  for  wrongful  use  of  civil
5   proceedings.  *Cf. Chodos v. West Publ'g Co.*, 292 F.3d 992, 1003
6   (9th Cir. 2002) (affirming denial of leave to amend where litigant
7   sought to add claim "shortly before the close of discovery" based
8   on  "new"  facts  that  were  available  to  him  before  the  first
9   amendment to his complaint).

10   During the May 22, 2012 telephonic hearing with the parties,
11   and after noting that the parties had chosen to proceed with the
12   initial cross motions for summary judgment before setting a full
13   case schedule, I inquired as to whether the parties had discussed
14   a proposed case schedule.  Plaintiff's counsel, Phillip Schuster
15   ("Schuster"), proposed a August 1, 2012 deadline for the close of
16   fact discovery.  Defendants' counsel, William Brandt, ("Brandt"),
17   agreed to Schuster's proposal during the May 22, 2012 telephonic
18   hearing.  Near the end of the hearing, at 11:15 a.m., I confirmed
19   this  deadline,  stating:  "I  am  going  to  give  you  today  a  fact
20   discovery  cut-off  of  August  1st."    Audio  recording:  Rule  16
21   Conference in Liberty Natural Prods., Inc. v. Hoffman, et al., held
22   by Mag. J. Dennis Hubel, (May 22, 2012).[3]  Since then, neither
23   party has requested an extension of the deadline to the close of
24   fact discovery.

25

26   [3] The parties and the Court reconvened on July 2, 2012, to
    discuss the case schedule; however, neither party asked for an
27   extension of the August 1, 2012 deadline for the close of fact
    discovery during the July 2, 2012 continuation of the Rule 16
28   conference.

Accordingly, Plaintiff's motion for leave to file a third amended complaint is denied. The Court will leave Hoffman's name as it is pled and the parties can make any necessary alteration at the time for the lodging of the pretrial order.

**B. Plaintiff's Motion to Remand to Clackamas County Circuit Court**

In the alternative, and in the event its motion for leave to amend is denied, Plaintiff moved the Court for an order remanding this proceeding to Clackamas County Circuit Court.

Plaintiff's counsel "stipulated to withdraw the motion to remand" during the November 21, 2012 hearing. (Hr'g Tr. 16, Nov. 21, 2012.)

### C. Brague's Motion to Quash

Plaintiff's wrongful use of civil proceedings claim is based on Defendants' commencement and prosecution of counterclaims against it in state court. Defendants' counterclaims originated in an answer and counterclaims filed by attorney Susan Felstiner in November 2008. On March 4, 2009, Ms. Felstiner's firm withdrew from representing Defendants based on non-payment of fees. On March 10, 2009, attorney Kevin Brague agreed to take over representation of Defendants after receiving copies of the pleadings and some documentation from Hoffman, such as a copy of a summary of business records. The trial commenced on March 25, 2009, 15 days after Brague's appearance in the case, and evidence was presented in support of Defendants' counterclaims. Judge Maurer ultimately found "that Defendants against whom judgment was granted herein filed counterclaims and/or defenses that were not objectively reasonable and were filed in an effort to gain leverage in settlement negotiations."

Page 9 - OPINION AND ORDER

1    On April 11, 2012, in this proceeding, the Court granted
2 Defendants' motion for leave to amend their answer to add an
3 affirmative defense of advice of counsel. "Advice of counsel, if
4 sought in good faith and if given after full disclosure of
5 information in the possession of the accuser establishes probable
6 cause as a matter of law," *Hartley v. Water Res. Dept.*, 77 Or.
7 App. 517, 520 (1986), which, in turn, negates an essential element
8 of a claim for misuse of civil proceedings. *See Pereira v.*
9 *Thompson*, 230 Or. App. 640, 674 (2009) (recognizing one element of
10 a claim for wrongful initiation of a civil proceeding as the
11 "absence of probable cause to prosecute the action.")

12    Plaintiff does not believe Hoffman sought advice of counsel in
13 good faith and after a full and frank disclosure of all pertinent
14 facts. *See Pereira*, 230 Or. App. at 675. Thus, Plaintiff has
15 asked Brague to produce: (1) "[a]ll correspondence, whether written
16 or electronic, including letters, e-mail or faxes from Valerie Hawk
17 Hoffman to Kevin Brague or from Kevin Brague to Valerie Hawk
18 Hoffman"; (2) "[a]ny written or typed transcriptions of telephone
19 messages from Valerie Hawk Hoffman"; and (3) "[a]ny documents
20 supplied to attorney Kevin Brague supporting the two counterclaims
21 in the Clackamas action, including trial exhibit 120, copies of any
22 invoices referred to in exhibit 120, copies of any log sheets or
23 memos concerning notations of purported damaged or adulterated
24 product delivered to the defendants by" Plaintiff. (Brague Decl.
25 Ex. 1 at 2-3.) Brague opposes this request on the grounds that
26 Plaintiff seeks disclosure of attorney-client privileged and
27 attorney work product documents.

28

Page 10 - OPINION AND ORDER

The oft-cited § 93 of McCormick on Evidence, which pertains to communications between a lawyer and client, discusses circumstances in which the privilege is waived:

> There are, in addition, a variety of other types of actions in which the advice of an attorney will sometimes be relied upon in support of a claim or defense. It has accordingly become established that if a party interjects the 'advice of counsel' as an essential element of a claim or defense, then that party waives the privilege as to all advice received concerning the same subject matter. . . . [S]pecific reliance upon the advice either in pleading or testimony will generally be seen as waiving the privilege.

McCormick, Evidence § 93 (2d ed. 1972); *see also U.S. E.E.O.C. v. American Apparel, Inc.*, 327 Fed. Appx. 11, 13 (9th Cir. 2009) (noting that "a party may waive both the attorney-client privilege or work product protection by injecting an issue into the case"); *see also Bittaker v. Woodford*, 331 F.3d 715, 719 (9th Cir. 2003) ("Substantial authority holds the attorney-client privilege to be impliedly waived where the clients asserts a claim or defense that places at issue the nature of the privileged material." (citation omitted)).

In this case, Defendants asserted the affirmative defense of advice of counsel in an amended answer filed on April 26, 2012. Defendants have therefore waived the privilege as to all communication and/or advice received concerning the counterclaims that are at issue here. Such information is imperative to Plaintiff's ability to challenge Defendants' affirmative defense of advice of counsel. Brague's motion to quash is therefore denied on this ground.

/// 

///

Page 11 - OPINION AND ORDER

1 **D. Plaintiff's Motion to Compel Answers to Interrogatories**

2     Pursuant to Rule 37(a)(3), Plaintiff moves to compel

3 Defendants to respond to Interrogatory Nos. 1-9 and 11-17 of its

4 second set of interrogatories. Plaintiff also seeks its reasonable

5 attorney fees and costs under Rule 37(a)(5)(A).

6     Rule 37(a)(3)(B) empowers a propounding party to "move for an

7 order compelling an answer, designation, production, or inspection"

8 if "a party fails to answer an interrogatory submitted under Rule

9 33" or "a party fails to respond that an inspection will be

10 permitted-- or fails to permit inspection-- as requested under Rule

11 34." FED. R. CIV. P. 37(a)(3)(B). Under Rule 37(a)(4), "an evasive

12 or incomplete disclosure, answer, or response must be treated as a

13 failure to disclose, answer, or respond." FED. R. CIV. P. 37(a)(4).

14     As the Ninth Circuit has explained, "broad discretion is

15 vested in the trial court to permit or deny discovery, and its

16 decision to deny discovery will not be disturbed except upon the

17 clearest showing the denial of discovery results in actual and

18 substantial prejudice to the complaining litigant." *Hallett v.*

19 *Morgan*, 296 F.3d 732, 751 (9th Cir. 2002) (quoting *Goehring v.*

20 *Brophy*, 94 F.3d 1294, 1305 (9th Cir. 1996)).

21     Interrogatory Nos. 1-9 and 11-17 of Plaintiff's second set of

22 interrogatories, which were propounded on June 5, 2012, asked

23 Defendants to:

24 •   "<u>Interrogatory No. 1</u>: Identify any knowledge or information

25     that you had subsequent to your emails of 4-03-2006, that

26     Liberty Natural Products, Inc. had any incidents with products

27     involving bug infestation, including the source of the

28     knowledge, the method by which it was communicated, and the

1    date it was communicated." (Schuster Decl. (ECF No. 127) Ex.

2    1 at 1.)

3  • "Interrogatory No. 2: List the dates you discovered any bug

4    infestations in goods that you received from Liberty Natural

5    Products, Inc., dba Spectrum Botanicals, including the date of

6    the order, invoice number, a description of the type of

7    infestation, the quantity of product, size of the product, and

8    the relative value." (*Id.* at 2.)

9  • "Interrogatory No. 3: Identify the major quality issues known

10   to you, referred to in Ripoff Report #4025980, including the

11   date, parties involved, product involved, and resolution of

12   the quality issues to your knowledge." (*Id.*)

13 • "Interrogatory No. 4: Identify any lawsuits you were aware of

14   in 2009 that were pending against Liberty Natural Products,

15   Inc." (*Id.*)

16 • "Interrogatory No. 5: Identify any knowledge you had in March

17   of 2009 that lawsuits were pending against Liberty, including

18   the name, media, date, and any details of the lawsuits." (*Id.*)

19 • "Interrogatory No. 6: Identify any knowledge or belief that

20   you possessed prior to March 18, 2009, of James Dierking

21   having lied, including the date you learned of the lie, source

22   of the information, the date of the lie, the media in which

23   the lie was transmitted and a description of the lie." (*Id.*

24   at 3.)

25 • "Interrogatory No. 7: Identify any knowledge or information

26   you possessed prior to March 29, 2009, that supports that

27   James Dierking 'was an unstable cannon just waiting to blow,'

28   'is not normal,' including the method by which you obtained

Page 13 - OPINION AND ORDER

1    the   information,   the   date,   and   a   description   of   the

2    information you received." (*Id.*)

3  •    "Interrogatory No. 8: Identify any evidence that you possess

4    that James Dierking committed severe defamation against the

5    Hoffmans as expressed in ripoffreport.com #425980 dated 3-29-

6    2009, including any evidence identifying Mr. Dierking as the

7    poster, and what elements of the posting are untrue." (*Id.*)

8  •    "Interrogatory No. 9: Identify your knowledge of any labor

9    issues that Liberty had, including the original source of the

10   information, the nature of the labor issue and how you became

11   aware of the issues." (*Id.* at 4.)

12 •    "Interrogatory No. 11: Identify any knowledge that you had in

13   March, 2009, that James Dierking's wife had 'gone after him,'

14   including the date and a description of the action." (*Id.*)

15 •    "Interrogatory No. 12: Identify any knowledge that you had in

16   March, 2009, that Jim Dierking or Liberty might have new

17   regulatory issues, including the source of the information,

18   the method by which it was received, and the date it was

19   received." (*Id.*)

20 •    "Interrogatory No. 13: Identify any information that you

21   received or possessed on or before March 29th, 2009, which

22   evidences that Jim Dierking is unprincipled, including the

23   source, a description of the information, the method by which

24   you received it, and the date." (*Id.* at 5.)

25 •    "Interrogatory No. 14: In regards to Hoffman v. Richardson,

26   Case# CA11-1303, filed by you in the 7th Judicial Circuit, St

27   Johns County, Florida in 2011, identify all discovery through

28   which you discovered that Defendant Roger Richardson sold you

Page 14 - OPINION AND ORDER

1    products that contained insects, including a full description

2    of the discovery, where it was obtained, when it was obtained,

3    and how it was obtained." (*Id.*)

4  • "<u>Interrogatory No. 15</u>: Identify any persons or organization

5    with whom you have discussed bug infestation regarding the

6    products supplied by Liberty to you, including the name,

7    approximate dates, and nature of the discussion or information

8    exchanged." (*Id.*)

9  • "<u>Interrogatory No. 16</u>: Identify any party by name that you

10    know posted anything regarding Liberty Natural Products, Inc.

11    on either Topix.com or ripoffreport.com." (*Id.* at 6.)

12  • "<u>Interrogatory No. 17</u>: Identify any personal property held by

13    you or your spouse in which you have had any interest, use,

14    occupancy or possession since 11-06-2008, including a

15    description of the personal property, your use, an estimate of

16    its value, the owner, and location of the property." (*Id.*)

17    The basis for Defendants' opposition to Plaintiff's motion to

18 compel answers to Interrogatory Nos. 1-9 and 11-17 is twofold.

19 First, Defendants argue that Plaintiff is seeking information it

20 plans to use against Defendants in other jurisdictions, including

21 its continued efforts to attempt to collect on the judgments

22 entered in the Clackamas County proceeding. Second, Defendants

23 argue the information Plaintiff requests has no bearing on the

24 third (probable cause) and fourth (malice) elements of a wrongful

25 use of civil proceedings claim (i.e., the elements that this Court

26 determined precluded the grant of Plaintiff's motion for partial

27 summary judgment).

28

1    Plaintiff's motion to compel answers to interrogatories is
2 granted in part and denied in part.  Defendants are ordered to
3 provide a detailed answer to Interrogatory Nos. 1-3 and 15.  I have
4 cautioned the parties' several times that this case does not
5 concern the parties litigation in other states, nor does it concern
6 an action to set aside a fraudulent conveyance and its too soon for
7 a judgment debtor's exam in this court.  However, Interrogatory
8 Nos. 1-3 and 15 fall outside the scope of the court's admonition
9 and need to be answered.

10 **E. Plaintiff's Motion to Compel Answers to Requests for Admission**

11    Pursuant to Rule 36(a)(6), Plaintiff has asked the Court to
12 determine the sufficiency of Defendants' answers and objections to
13 Request Nos. 9-18, 20, and 23-51 of its third request for
14 admissions.  *See* Fed. R. Civ. P. 36(a)(6) ("The requesting party
15 may move to determine the sufficiency of an answer or objection.
16 Unless the court finds an objection justified, it must order that
17 an answer be served.  On finding that an answer does not comply
18 with this rule, the court may order either that the matter is
19 admitted or that an amended answer be served.")

20    Request Nos. 3, 9-18, 20, and 23-51 of Plaintiff's third
21 request for admissions asked Defendants to admit:

22 •  Request No. 3: That you or one of the Defendants purchased a
23    product labeled Fresh Start from another supplied named Terra
24    Botanica.

25 •  Request No. 9: That you caused a report to be published
26    regarding attorney Tim Vanagas at RipoffReport.com in March
27    2009.

28

Page 16 - OPINION AND ORDER

1 • Request No. 10: That you were a party to a lawsuit involving
2   a construction contract to build a house at 37 Codfish Hill
3   Road, Bethel, CT.
4 • Request No. 11: That you have been a representative of Hoffman
5   and Hawk, LLC.
6 • Request No. 12: That you were a representative of Hoffman and
7   Hawk Builders, LLC.
8 • Request No. 13: That you were involved with or had an interest
9   in the Hoffman and Hawk, LLC build order contract for
10  construction of a new home at 37 Codfish Hill Road, Bethel,
11  Connecticut.
12 • Request No. 14: That you were involved with and or had an
13  interest in the Hoffman and Hawk Builder, LLC build order
14  contract for the construction of a new home at 37 Codfish Hill
15  Road, Bethel, Connecticut.
16 • Request No. 15: That you or one of your companies has either
17  received or anticipated receiving remuneration, monies, or
18  tangible benefit from the sale of 37 Codfish Hill Road,
19  Bethel, CT.
20 • Request No. 16: That you have been a member of Peaceful
21  Properties, LLC.
22 • Request No. 17: That you forgave payment of the promissory
23  note you received for the transfer of your interest in 869
24  Summer Harbor Road, Winter Harbor, Maine to Peaceful
25  Properties, LLC after Liberty's recording of its judgment in
26  Maine in 2009.
27 • Request No. 18: That you or one of your companies has
28  contributed monetarily or in-kind to the construction and or

Page 17 - OPINION AND ORDER

maintenance and repair and or payment for utilities of 869 Summer Harbor Road, Winter Harbor, Maine after you signed a deed transferring your interest to Peaceful Properties, LLC in October 2006.

- <u>Request No. 20</u>: That you lived at the 869 Summer Harbor Road, Winter Harbor, Maine property in the years 2006, 2007, 2008, 2009, 2010.

- <u>Request No. 23</u>: That you signed a Connecticut Civil Investigative Demand stating that David Boyd was a manager and operator of Sunrise Herbal Remedies, Inc. from 1994 until the time of the filing of the response in May 2005.

- <u>Request No. 24</u>: That the David Boyd you stated was a manager and operator of Sunrise Herbal Remedies, Inc. in a Connecticut Civil Investigative Demand response was your husband David Boyd Hoffman.

- <u>Request No. 25</u>: That when you sold Wicked Wick Candles in January 2009 for $89,000.00 you stated in an email to the purchasers that 60% of annual revenues were from existing customers.

- <u>Request No. 26</u>: The Defendants, from October of 2006, when the amounts owed to Plaintiff began to accrue, to the present, possessed a financial net worth greater than the amount owing to pay Plaintiff.

- <u>Request No. 27</u>: That you signed as grantor and mortgagor on a $250,000.00 open ended credit line from Wachovia bank secured on 25 Codfish Hill Road, Bethel, Connecticut dated 4-14-2007.

- <u>Request No. 28</u>: That in October, 2006, you entered into an agreement with Roger Richardson that arrearage owing to

Spectrum would be paid from the sale proceeds of 35 Codfish Hill Road, Bethel, Connecticut upon its sale.

- Request No. 29: That you received $16,000.00 deposit on the purchase of Groovy Smoothy in February 2007.

- Request No. 30: That you failed to refund the $16,000.00 deposit to the Groovy Smooth purchasers named Burke when informed of their exercise of the rescission provision of the purchase agreement allowing for a return of their down payment.

- Request No. 31: That you received more than $195,00.00 from the sale of an asset called Garden Girl in January of 2006.

- Request No. 32: That you or one of the Defendant's or an entity in which you have an interest or have been involved, received more than $155,000.00 for the sale of an asset called Groovy Smoothy in July 2007.

- Request No. 33: That you or one of the Defendant's or an entity in which you have an interest or have been involved, received more than $150,000.00 from the sale of an asset called Sea of Tea Herbs in April of 2007.

- Request No. 34: That you or one of the Defendant's or an entity in which you have an interest or have been involved, received more than $195,000.00 from the sale of an asset called Green Cuisine Herbs in February 2006.

- Request No. 35: That a Rolls Royce titled in the name of Defendant Valerie Hoffman was sold in December of 2007 for $78,900.00.

- Request No. 36: That you signed the bill of sale for a Rolls Royce sold in December 2007 as the owner.

- <u>Request No. 37</u>: That on 11-06-2008 you were in title to a condominium at 2180 lbis Isle #15, Palm Beach, Florida with an assessed value of over $500,000.00, which was unencumbered by any obligations to any lenders.

- <u>Request No. 38</u>: That on 11-06-2008 you were in title to a condominium at 2180 lbis Isle #15, Palm Beach, Florida valued at over $500,000.00.

- <u>Request No. 39</u>: That after 11-06-2008, you, or one of the Defendants or an entity under your control or in which you were involved, offered an asset called Get You Goat Soap, for sale for $89,000.00.

- <u>Request No. 40</u>: That after 11-06-2008, you, or one of the Defendants, or an entity under your control or in which you were involved, offered an asset described as a pickle product line and name Princess Pretty Pickles for sale for $157,000.00.

- <u>Request No. 41</u>: That after 11-06-2008, you, or one of the Defendants, or an entity under your control or in which you were involved, offered for sale an asset named Spice Guy Foods for more than $59,000.00.

- <u>Request No. 42</u>: That after 11-06-2008, you, or one of the Defendants, or an entity under your control or in which you were involved, offered an asset described as Juice Boosts for sale for more than $59,000.00.

- <u>Request No. 43</u>: That after 11-06-2008, you, or one of the Defendants, or an entity under your control or in which you were involved, offered for sale an asset named Backwood Brews for $69,000.00.

1   •   <u>Request No. 44</u>: That after filing of the Defendants'
2       counterclaims on 11-06-2008, Defendant Valerie Hoffman caused
3       to be published on the internet at ripoffreport.com,
4       statements that Liberty had major product quality problems.
5   •   <u>Request No. 45</u>: That you or one of the entities under your
6       control had the financial resources to either secure or payoff
7       the arrearage owing to Liberty between October of 2006 and the
8       time of the Oregon trial in March 2009.
9   •   <u>Request No. 46</u>: That you, or one of the Defendants, an entity
10      under your control elected not to pay Liberty when you had the
11      financial capacity to do so.
12  •   <u>Request No. 47</u>: That you, or one of the Defendants owe former
13      herbal extract supplier Terra Botanica over $25,000.00 for
14      goods shipped which has not been paid.
15  •   <u>Request No. 48</u>: That Terra Botanica attempted collection of
16      the debt and you, or one of the Defendants, elected not to
17      pay.
18  •   <u>Request No. 49</u>: That you are named as beneficiary or heir to
19      a will.
20  •   <u>Request No. 50</u>: That you are named as a beneficiary to a
21      trust.
22  •   <u>Request No. 51</u>: That you did not advise Liberty of labeling
23      and website regulatory action you or one of the Defendants
24      were subjected to by the Food and Drug Administration.
25      Defendants did not specifically address Request No. 3 in their
26  briefing.  With respect to Request No. 9, Defendants argue that,
27  even if Hoffman was responsible for publishing information
28  regarding Vanagas, it would have no bearing on any of the issues

Page 21 - OPINION AND ORDER

presently before this Court.  With respect to Request Nos. 10-18,
20, 24-43, and 45-50, Defendants contend its "answers to these
requests for admissions would not serve any useful purpose in this
litigation because what these requests for admission do is seek to
expand the scope of the litigation as opposed to narrow it."
(Defs.' Opp'n (ECF No. 133) at 9.)  With respect to Request No. 23,
Defendants contend that such a "request cannot possibly have any
bearing whatsoever on any issue in this [wrongful use of civil
proceedings] case."  (*Id.* at 10.)  With respect to Request No. 44,
Defendants argue that whether or not Hoffman published something on
the Internet is not reasonably calculated to lead to evidence would
be admissible at trial either on the issue of liability or punitive
damages.  Defendants did not specifically address Request No. 51 in
their moving papers, but the Court notes no apparent relation to
claims in litigation here.

Plaintiff's motion to compel answers to these requests for
admission are all denied.  Not a single one bears on any issue to
be resolved in the pending claim.

### F. Plaintiff's Motion to Compel Production of Documents

Pursuant to Rule 37, Plaintiff moves the Court for an order
compelling Defendants to comply with Request Nos. 1 and 3-19 of its
second request for production of documents.

For the reasons stated on the record at the time of oral
argument, all of which are incorporated herein by reference,
Plaintiff's motion to compel production of documents in granted in
part and denied in part.  Defendants must produce (1) *complete*
corporate and individual state and federal tax returns for, at a
minimum, 2007 through 2011; (2) any existing financial statements

prepared by, or for, Defendants from November 6, 2008 to the present; (3) current financial statements which contain or are verified by a written declaration that they are made under the penalties of perjury; and (4) any material necessary to complete the returns for 2005 and 2006 that have already been provided to Plaintiff.  This material will be subject to the protective order filed contemporaneously herewith.

As stated on the record at the time of oral argument, Defendants must also produce "[a]ll documents, correspondence, emails, or communications [Defendants] received from ripoffreport.com" and "[a]ll documents, correspondence, emails or communications with parties who posted or facilitated the posting at ripoffreport[.com] against James Dierking or Liberty Natural Products, Inc.", (Schuster Decl. (ECF No. 140) Ex. 1 at 2), for the time period of March 2008 to August 2009, to the extent such material exists in the custody or control of Hoffman or either of the corporate defendants.

### G. Plaintiff's Motion for Sanctions

Pursuant to Rule 11(c), Plaintiff moves the Court for an order imposing non-monetary sanctions on the grounds that Defendants have filed fabricated documents during the course of this litigation.

Plaintiff's motion for sanctions concerns (1) Defendants' counsel's filing of three documents – which were contained in the file of Hoffman's former attorney, Susan Felstiner – in opposition to Plaintiff's motion for partial summary judgment; and (2) Defendants' filing in this case of documents that pertain to the parties litigation in Florida (i.e., the case concerning alleged

Page 23 - OPINION AND ORDER

1  libelous statements about Dierking and Plaintiff that were posted
2  on ripoffreport.com).

3      To the extent Plaintiff's motion for sanctions implicates the
4  second category of documents, the Court denies the motion as moot
5  because the Court has been asked by the parties to treat these
6  documents as withdrawn.   To the extent Plaintiff's motion for
7  sanctions implicates the three documents contained in Susan
8  Felstiner's file, the motion is denied because these documents were
9  filed by Defendants' counsel in good faith. *See MTEC, LLC v. Nash*,
10 No. CV 08-563-AC, 2008 WL 4723483, at *8 (D. Or. Oct. 20, 2008)
11 (explaining that "the Court should still not impose [Rule 11]
12 sanctions, because [the challenged documents] were filed in good
13 faith.")

### III. *CONCLUSION*

15     Before summarizing the rulings on these motions, which exist
16 in ridiculous numbers at this point in the history of litigation
17 between these parties, I pause to reflect on the conduct of the
18 parties.  The courts in the United States are intended to resolve
19 the disputes between citizens.   Looking at the history of
20 proceeding between these parties, I can find no evidence to support
21 the notion that either is motivated to resolve their differences
22 and get on with their lives and businesses.   Rather, their
23 "business plan" seems to be to use the courts to multiply their
24 disputes and inflict as much turmoil and expense as possible on
25 each other.  This judge will not join, nor participate in their
26 quest.  This court has one case in front of it which will be
27 resolved despite the best efforts of the parties to prevent that
28 result.  The parties and their lawyers are well advised to focus on

1    the resolution of the claim now before the court efficiently and
2    expeditiously.   Needless distraction from that purpose will not be
3    tolerated.    This warning shot is fired across all your bows to
4    borrow a naval metaphor.

5        Consistent with the discussion above, Plaintiff's motion (ECF
6    No. 104) to file a third amended complaint is DENIED; Plaintiff's
7    motion (ECF No. 108) to remand to Clackamas County Circuit Court
8    has been withdrawn; Brague's motion to quash a subpoena duces tecum
9    is DENIED; Plaintiff's motion (ECF No. 124) to compel answers to
10   interrogatories is GRANTED in part and DENIED in part; Plaintiff's
11   motion (ECF No. 128) to compel answers to requests for admission is
12   DENIED; Plaintiff's motion (ECF No. 137) to compel production of
13   documents is GRANTED in part and DENIED in part; Defendants' motion
14   (ECF No. 150) for leave to file a supplemental response, nunc pro
15   tunc, has been withdrawn; and Plaintiff's motion (ECF No. 152) for
16   sanctions is DENIED.

17       IT IS SO ORDERED.

18       Dated this 8th day of February, 2013.

19                                /s/ Dennis J. Hubel

20                       _____
                                  DENNIS J. HUBEL
21                        United States Magistrate Judge

22

23

24

25

26

27

28

Page 25 - OPINION AND ORDER